**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSUE TAPIA, | ) | |
| | ) | No.    11 C 07997 |
| Plaintiff, | ) | |
| | ) | JUDGE CASTILLO |
| vs. | ) | |
| | ) | Magistrate Judge Ashman |
| OFFICER SKARUPINSKI, OFFICER CHUDY | ) | |
| #16126, OFFICER ROONEY, #10420, OFFICER | ) | |
| WAKE #7403, SERGEANT RAYL #820, | ) | |
| OFFICER LAYNE #8240, OFFICER LOPEZ | ) | |
| #15191, OFFICER BUBACZ #13632, OFFICER | ) | |
| SHERLOCK #10823, and THE CITY OF | ) | |
| CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT**

Defendant Officers Skarupinski, Chudy, Rooney, Wake, Rayl, Layne, Lopez, Bubacz, and

Sherlock and the City of Chicago, by and through their attorney, Matthew A. Hurd, Deputy

Corporation Counsel, for their answer to Plaintiffs Complaint, hereby states as follows:

**JURISDICTION AND VENUE**

1.      This is an action for money damages brought pursuant to 42 U.S.C. § 1983 and the
common law and statutes of the State of Illinois.

**ANSWER: Defendants admit that Plaintiff purports to bring this action pursuant to section**

**1983  and the common law and statutes of the State of Illinois.  Defendants deny the remaining**

**allegations contained in this paragraph.**

2.      This Court has jurisdiction over PLAINTIFF'S federal claims pursuant to 28 U.S.C.
§§ 1331 and 1343(a) and over PLAINTIFF'S state claims pursuant to the Court's supplemental
jurisdiction under 28 U.S.C. § 1367(a).

1

**ANSWER:  Defendants admit that jurisdiction is proper.**

3.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

**ANSWER:  Defendants admit that venue is proper.**

## PARTIES

4.      PLAINTIFF is a resident of Cook County, Illinois.

**ANSWER:  Defendants lack personal knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore deny the same.**

5.      The DEFENDANT OFFICERS were at all times relevant to this Complaint duly appointed and sworn Chicago Police Officers.

**ANSWER: Admitted.**

6.      The DEFENDANT OFFICERS were acting in the course and scope of their employment at all times where their conduct is referenced in this complaint.

**ANSWER:  Admitted.**

7.      The DEFENDANT OFFICERS were on duty during the times in which their conduct is referenced in this complaint.

**ANSWER:  Admitted.**

8.      At all times material to this Complaint, the DEFENDANT OFFICERS were acting under color of state law, ordinance and/or regulation, statutes, custom and usages of the CITY OF CHICAGO.

**ANSWER:  Admitted.**

9.      This action is brought against the DEFENDANT OFFICERS in their individual capacities.

**ANSWER: Admitted.**

10.     The CITY OF CHICAGO is a duly incorporated municipal corporation.

2

**ANSWER: Admitted.**

11.    The CITY OF CHICAGO shall provide legal representation for and indemnify the Defendant officers for the charges lodged in this action.

**ANSWER: Admitted.**


## INTRODUCTORY FACTS

12.    On May 15, 2011, Chicago police officers arrested the wrong person. The DEFENDANT OFFICERS believed that they had arrested an individual who had an outstanding warrant but erred and arrested a different individual all together. At the time of the arrest, JOSUE TAPIA was lawfully driving his vehicle. Inside his vehicle were his wife and nephew. When the DEFENDANT OFFICERS arrested the PLAINTIFF believing him to be someone else, they attacked him, threw him to the ground and tasered him so frequently that their conduct amounted to torture.

**ANSWER:  Defendants specifically deny that On May 15, 2011, Chicago police officers arrested the wrong person. Defendants admit  that Defendant Officers believed that they had arrested an individual who had an outstanding warrant, and, on information and belief, that inside his vehicle were his wife and nephew.  Defendants deny the remaining allegations made and contained in this paragraph.**

13.    Torture is defined, by the United Nations Convention Against Torture as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as ... punishing him for an act he ... has committed or is suspected of having committed ... or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by ... a public official or other person acting in an official capacity."

**ANSWER: The allegations made and contained in this paragraph constitute a legal conclusion to which no response is required.**

14.    The mere use of a taser is not torture. However, in the instant case, the PLAINTIFF was caused to suffer severe physical pain by being tasered on eleven (11) occasions, and beatings at the hand of Chicago Officers, which was inflicted for discriminatory and/or punitive purposes for a crime he was suspected to have committed.

**ANSWER: Defendants deny the allegations made and contained in Paragraph 14 except to admit that the use of a taser is not torture.**

15.    The crime the PLAINTIFF was suspected to have committed was the subject matter of an outstanding warrant for a different individual. The officers believed, without investigation, that the PLAINTIFF had avoided and/or attempted to avoid incarceration and/or legal proceedings, by not submitting himself to a court for adjudication of a criminal legal matter.

**ANSWER: Defendants deny it was without investigation, but admit the remaining allegations**

**of this paragraph.**

16.    The discriminatory act concerned the PLAINTIFF'S status as a Hispanic. Given the PLAINTIFF'S heritage and the area where the incident occurred, the officers believed that they could use outrageous aggression towards the PLAINTIFF, without consequences.

**ANSWER: Defendants admit, upon information and belief, that Plaintiff is of Hispanic descent.**

**Defendants deny the remaining allegations made and contained in this paragraph.**

17.    On eleven (11) occasions, the electrical impulses from the Taser passed through the PLAINTIFF'S body for a five to six second duration. The discharges were rapid fire, leaving only a few seconds between each before the next firing occurred.

**ANSWER: Denied.**

18.    The PLAINTIFF experienced excruciating pain. His body was thrown into convulsions, shaking involuntarily, as the electricity repeatedly passed through his body, causing him to foam at the mouth.

**ANSWER:  Defendants lack personal knowledge sufficient to form a belief as to the truth of**

**the allegations contained in this paragraph, and therefore deny the same.**

19.    The PLAINTIFF has been seriously damaged. His mind has been altered by the electrical impulses, to such an extent that he is no longer the same person he was prior to the experience. For example, the PLAINTIFF is not able to work and/or care for his children as he did prior to this occurrence.

**ANSWER:  Defendants lack personal knowledge sufficient to form a belief as to the truth of**

**the allegations contained in this paragraph, and therefore deny the same.**

20.    The Chicago Police Officers, knowing they had tasered the wrong person and used outrageous force, covered up their misconduct by charging the PLAINTIFF for the commission of severe crimes.

4

**ANSWER: Defendants admit that Plaintiff was charged with the commission of serious crimes, but deny the remaining allegations made and contained in this paragraph.**

21. Torture is not new to certain Chicago Police Officers. Many officers have been recently prosecuted civilly for prior acts of torture.

**ANSWER: Defendants lack personal knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore deny the same.**

22. Prior torture utilized by Chicago Officers concerned the use of electricity inflicted on civilians.

**ANSWER: Defendants lack personal knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore deny the same.**

23. Ex-Commander Burge was recently convicted by a federal jury for committing perjury by denying knowledge as to prior acts of torture. In connection with that cause, prior acts of torture were covered up by Chicago Police Officers to avoid being subject to criminal prosecution.

**ANSWER: Defendants lack personal knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore deny the same.**

24. The DEFENDANT OFFICERS, aware of the past public spotlight attributable to torture and severe acts of violence, sought to cover-up their misconduct so that their actions would not draw attention by authorities who prosecute officers for criminal conduct.

**ANSWER: Defendants deny each and every allegation made and contained in Paragraph 24.**

25. The DEFENDANT OFFICERS are aware that a practice occurs among Chicago Police Officers wherein information that is detrimental to fellow officers is withheld by way of a code of silence, as has occurred in *Alexandar v. City of Chicago*, 8 C 6688; *Smith v. City of Chicago*, 9 C 0475; *U.S.A. v. Commander Jon Burge*, 8 CR 8416, *U.S.A v. Jerome Finnigan* and *Keith Herrera*, 7 CR 634.

**ANSWER: Defendants lack personal knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore denies the same.**

26. In their reports, the DEFENDANTS charged PLAINTIFF with having battered three

5

Chicago Police Officers (RAYL, SKARPUNSKI and ROONEY). They further falsified evidence by submitting that PLAINTIFF was under the influence of PCP and alcohol.

**ANSWER: Defendants admit that in their reports, they charged PLAINTIFF with having battered three Chicago Police Officers (Rayl, Skarpunski, and Rooney), deny the remaining allegations made and contained in this paragraph.**

27.     The medical records relating to the emergency medical treatment PLAINTIFF received, demonstrate by way of blood and/or urine analysis that PLAINTIFF'S body was devoid of PCP, alcohol or any other substance that could have altered his demeanor in any fashion.

**ANSWER:  Defendants lack personal knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore deny the same.**

28.     The DEFENDANT OFFICERS believed that if they charged the PLAINTIFF with crimes, he may be found guilty, pursuant to false representations they submitted in official documents and to a Court.

**ANSWER:  Defendant Officers admit that they believed, based on the illegal acts of Plaintiff, that he would be convicted of battering a police officer, but deny the remaining allegations made and contained in this paragraph.**

29.     If the PLAINTIFF was found guilty of any of the charges lodged, the DEFENDANT OFFICERS believed that they would be exonerated for the crimes they committed.   It is well established pursuant to Illinois and Federal law that an officer may use force upon a civilian if that civilian uses force upon an officer. A conviction of any of the charges lodged against the PLAINTIFF would have provided significant substantiation of the officers' allegations. However, the charges could only have been successful by way of misrepresentations submitted to a Cook County criminal court judge and jury.

**ANSWER:  Defendants admit that, were the Plaintiff to be convicted of the charges against him, this would substantiate the Defendant Officers' account of events.  Defendants specifically deny that Defendant Officers committed any crimes and that the charges against Plaintiff could only been successful by way of misrepresentations submitted to a Cook County criminal court**

judge and jury. The remainder of the allegations in this paragraph constitute a legal conclusion to which no response is required.

30.     In this matter, the DEFENDANT OFFICERS charged the PLAINTIFF with two counts of aggravated battery and two counts of aggravated resisting arrest. All of these charges were felonies and could have resulted in many years of incarceration for the PLAINTIFF.

ANSWER: Defendants admit that Plaintiff was charged with two counts of aggravated battery and two counts of aggravated resisting arrest, that these charges were felonies and could have resulted in the Plaintiff's incarceration for multiple years. Defendants deny the remainder of the allegations made and contained in this paragraph.

31.     PLAINTIFF, at the time he was charged, had four young children and a wife and would have suffered tremendously if he was caused to be incarcerated pursuant to the fabricated charges.

ANSWER: Defendants lack personal knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore denies the same.

32.     On November 3, 2011, a Cook County jury determined that the PLAINTIFF was not guilty of each and every felony charge lodged against the PLAINTIFF by the DEFENDANT OFFICERS.

ANSWER: Defendants admit that on November 3, 2011, a Cook County jury determined that the Plaintiff was not guilty of each and every felony charge lodged against the Plaintiff, but deny the remaining allegations made and contained in this paragraph.

## SPECIFIC ALLEGATIONS OF MISCONDUCT

33.     On May 15, 2010, DEFENDANT OFFICERS SKARUPINSKI and ROONEY performed a traffic stop of the PLAINTIFF, near the cross streets of 45th street and Hermitage.

ANSWER: Admitted

34.     After reviewing his driver's license, these officers released the PLAINTIFF.

**ANSWER: Admitted.**

35.    After releasing the PLAINTIFF, a computer within their police car provided information as to a J. Tapia.

**ANSWER: Admitted.**

36.    This J. Tapia was not the PLAINTIFF.

**ANSWER**: **Admitted.**

37.    This J. Tapia had an outstanding warrant pursuant to the information provided by the in-car computer.

**ANSWER: Admitted.**

38.    The in-car computer provides information as to more than 10 million individuals.

**ANSWER: Defendants lack personal knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore these allegations are deemed denied.**

39.    The J. Tapia mentioned above was thirty pounds heavier than the PLAINTIFF.

**ANSWER: Defendants deny each and every allegation made and contained in this paragraph.**

40.    The J. Tapia mentioned above was six inches shorter than the PLAINTIFF.

**ANSWER: Admitted.**

41.    The J. Tapia mentioned above was twelve years older than the PLAINTIFF.

**ANSWER: Admitted.**

42.    The information in paragraphs 39-41 was available to Officers Starupinski and Rooney on Plaintiffs driver's license when they stopped PLAINTIFF. Officer Starupinski and Rooney knew or reasonably should have known of the discrepancies between PLAINTIFF and the J. Tapia name listed on the warrant.

**ANSWER: Defendants deny each and every allegation made and contained in this paragraph.**

43.    After receiving information about the warrant, DEFENDANT OFFICER SKARUPINSKI and ROONEY approached PLAINTIFF'S car at 43rd and Paulina. At that point in

time DEFENDANT OFFICERS SKARUPINSKI and ROONEY seized PLAINTIFF, even though neither officer had a reasonable belief that the PLAINTIFF had committed, was committing, or was going to commit criminal activity of any sort.

**ANSWER: Defendants admit that after receiving information about the warrant, Defendant**

**Officer Skarupinski and Rooney approached Plaintiff's car at 43rd and Paulina and seized**

**Plaintiff. Defendants deny the remaining allegations made and contained in this paragraph.**

44. Subsequently, the balance of the DEFENDANT OFFICERS arrived on the scene and arrested, participated in or caused the arrest of the PLAINTIFF without probable cause to believe that the PLAINTIFF had committed, was committing or was going to commit criminal activity.

**ANSWER: Defendants admit that subsequent to the events alleged in Paragraph 43, Officers**

**Chudy, Wake, Rayl, Layne, Lopez, Bubacz, and Sherlock arrived on the scene. Defendants**

**deny the remaining allegations made and contained in this paragraph.**

45. The DEFENDANT OFFICERS also engaged in an unreasonable search of the PLAINTIFF. Specifically DEFENDANT OFFICERS searched the PLAINTIFF'S vehicle and the PLAINTIFF'S person without a search warrant, without PLAINTIFF'S consent, and without a reasonable suspicion that any contraband or evidence of criminal conduct was concealed on the PLAINTIFF'S person and/or in PLAINTIFF'S vehicle. The actions of the DEFENDANT OFFICERS alleged herein violated the Fourth Amendment to the United States Constitution.

**ANSWER: Denied.**

46. On or about May 15, 2010, the DEFENDANT OFFICERS touched PLAINTIFF in an unwanted and offensive manner, used unreasonable force and/or failed to intervene in the use of unreasonable force upon PLAINTIFF. Specifically, but without limitation:

a. the DEFENDANT OFFICERS struck and kicked the PLAINTIFF, even though the PLAINTIFF was offered no resistance and posed no threat to himself or anyone else.

b. DEFENDANT OFFICER RAYL and CHUDY discharged a Taser onto the PLAINTIFF'S body eleven (11) times, even though PLAINTIFF offered no resistance and posed no threat to himself, police officers, or anyone else.

**ANSWER: Defendants deny each and every allegation made and contained in this paragraph.**

47. The use of force initiated by and/or the failure to intervene in the use of force by the

DEFENDANT OFFICERS on or about May 15, 2010 caused an unreasonable seizure of the PLAINTIFF in violation of the Fourth Amendment to the United States Constitution.

**ANSWER: The allegations made and contained in this paragraph constitute a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny each and every allegation made and contained in this paragraph.**

48.   All DEFENDANT OFFICERS had the ability and were in sufficient proximity to prevent the use of force perpetrated upon the PLAINTIFF by any DEFENDANT.

**ANSWER: The allegations made and contained in this paragraph constitute a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny each and every allegation made and contained in this paragraph.**

49.   On or about May 15, 2010, the DEFENDANT OFFICERS charged and/or participated in the charging of the PLAINTIFF with criminal activity despite the fact that these officers failed to observe or learn that PLAINTIFF had committed criminal activity of any sort.

**ANSWER: Defendants deny each and every allegation made and contained in this paragraph.**

50.   The DEFENDANT OFFICERS were absent probable cause to believe that the PLAINTIFF had committed, was committing or was going to commit any criminal activity on or about May 15, 2010.

**ANSWER: The allegations made and contained in this paragraph constitute a legal conclusion to which no response is required. To the extent that such a response is required, Defendants deny each and every allegation made and contained in this paragraph.**

51.   On or about May 15, 2010, the DEFENDANT OFFICERS participated in the charging of PLAINTIFF with criminal activity despite the fact that none of these DEFENDANT OFFICERS observed or learned that PLAINTIFF had committed criminal activity of any sort.

**ANSWER: Defendants deny each and every allegation made and contained in this paragraph.**

52.   On or about May 15, 2010, PLAINTIFF had not committed any act contrary to the laws of the State of Illinois.

**ANSWER: Defendants deny each and every allegation made and contained in this paragraph.**

53.     After his arrest, the PLAINTIFF was charged with two felony counts of aggravated battery and two felony counts of resisting arrest.

**ANSWER:  Admitted.**

54.     On or about November 3, 2011, a Cook County Jury found the PLAINTIFF not guilty of all charges lodged against him by the DEFENDANT OFFICERS.

**ANSWER:  Defendants admit that on or about November 3, 2011, a Cook County Jury found the Plaintiff not guilty of each and every felony charge lodged against the Plaintiff, but deny the remaining allegations made and contained in this Paragraph.**

55.     All felonies lodged against the PLAINTIFF, arising out of the May 15, 2010 arrest have been terminated.

**ANSWER:  Defendants lack personal knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore deny the same.**

56.     All felonies lodged against the PLAINTIFF, arising out of the May 15, 2010 arrest have terminated in a manner indicative of PLAINTIFF'S innocence.

**ANSWER:  The allegations made and contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent that a response is required, Defendants lack personal knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore deny the same.**

57.     As a direct and proximate result of one or more of the acts of or omissions by the DEFENDANT OFFICERS, PLAINTIFF was caused to suffer damages including, but not limited to, physical injury, pain and suffering, humiliation and emotional and psychological distress, prolonged hospitalization and financial losses, including but not limited to attorneys' fees.

**ANSWER:  The allegations made and contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent that such a response is required, Defendants**

11

**lack personal knowledge sufficient to form a belief as to the truth of the allegations contained**

**in this paragraph, and therefore deny the same.**

58.    On May 15, 2010, DEFENDANT OFFICER SKARUPINSKI came into physical contact with PLAINTIFF.

**ANSWER:  Admitted.**

59.    On May 15, 2010, DEFENDANT OFFICER CHUDY tasered the PLAINTIFF.

**ANSWER:  Admitted.**

60.    On May 15, 2010, DEFENDANT OFFICER ROONEY came into physical contact with PLAINTIFF.

**ANSWER:  Admitted.**

61.    On May 15, 2010, DEFENDANT OFFICER WAKE came into physical contact with PLAINTIFF.

**ANSWER:  Admitted.**

62.    On May 15, 2010, DEFENDANT OFFICER LAYNE came into physical contact with PLAINTIFF.

**ANSWER:  Admitted.**

63.    On May 15, 2010, DEFENDANT OFFICER LOPEZ came into physical contact with PLAINTIFF.

**ANSWER:  Admitted.**

64.    On May 15, 2010, DEFENDANT OFFICER BUBACZ came into physical contact with PLAINTIFF.

**ANSWER:  Defendants deny each and every allegation made and contained in this paragraph.**

65.    On May 15, 2010, DEFENDANT OFFICER SHERLOCK came into physical contact with PLAINTIFF.

**ANSWER:  Defendants deny each and every allegation made and contained in this paragraph**.

66.     On May 15, 2010, DEFENDANT OFFICER RAYL tasered the PLAINTIFF.

**ANSWER: Admitted.**

67.     Collectively (meaning, added together), RAYL and CHUDY tasered the PLAINTIFF eleven times.

**ANSWER: Defendants lack personal knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore these allegations are deemed denied.**

68.     Collectively, the total number of times the Taser was fired by DEFENDANTS RAYL and CHUDY, wherein the Taser was directed at the PLAINTIFF, was eleven.

**ANSWER: Admitted.**

69.     Each time a Taser was fired, directed at the PLAINTIFF, the duration of the electrical firing was for a minimum of five seconds in duration.

**ANSWER: Denied.**

### Conspiracy

70.     The DEFENDANT OFFICERS conspired and acted together to cause damage to PLAINTIFF by one or more of the following actions:

a.     agreed to falsely arrest the PLAINTIFF;

b.     agreed to falsely institute and/or continue criminal charges/proceedings against the PLAINTIFF; and

c.     used excessive force and/or failed to intervene in the use of excessive force against the PLAINTIFF.

**ANSWER: Defendants deny each and every allegation made and contained in this paragraph.**

71.     The DEFENDANT OFFICERS conspired and acted together to cover up the false arrest of the PLAINTIFF without probable cause or legal authority.

**ANSWER: Defendants deny each and every allegation made and contained in this paragraph.**

72.     The DEFENDANT OFFICERS conspired and acted together to cover up the use of excessive force against the PLAINTIFF and/or the failure to intervene in the use of excessive force

against the PLAINTIFF.

**ANSWER: Defendants deny each and every allegation made and contained in this paragraph.**

73.     The DEFENDANT OFFICERS conspired and acted together to cover up the crimes they had committed by charging the PLAINTIFF with the commission of serious felonies.

**ANSWER: Defendants admit that the Plaintiff was charged with the commission of serious**

**felonies, but deny the remaining allegations made and contained in this paragraph.**

74.     The DEFENDANT OFFICERS conspired and acted together to cover up the torture they inflicted upon the PLAINTIFF by charging the PLAINTIFF with the commission of serious felonies.

**ANSWER: Defendants deny each and every allegation made and contained in this paragraph.**

75.     The DEFENDANT OFFICERS generated false and/or incomplete official reports regarding the PLAINTIFF, alleged above, and gave false and/or incomplete versions of the events to other officers and/or the State's Attorney's Office, in order to cover up and prevent disclosure of their misconduct.

**ANSWER: Defendants deny each and every allegation made and contained in this paragraph.**

76.     In furtherance of the conspiracy alleged above, the DEFENDANT OFFICERS engaged in communication on or about May 15, 2010 and/or thereafter, whereby the DEFENDANT OFFICERS agreed to facilitate, engage in and support the actions and conduct alleged above.

**ANSWER: Defendants deny each and every allegation made and contained in this paragraph,**

**except to admit that the Defendant Officers communicated with one another on May 15, 2010.**

77.     As a result of this conspiracy, the DEFENDANT OFFICERS, by and through their actions, proximately caused PLAINTIFF to suffer, inter alia, physical injury, humiliation, fear, anxiety and emotional distress; to be charged with criminal allegations; and incur financial losses, including but not limited to attorneys' fees.

**ANSWER: The allegations made and contained in this paragraph constitute a legal conclusion**

**to which no response is required.  To the extent that such a response is required, Defendants**

**deny each and every allegation made and contained in this paragraph.**

14

<u>**COUNT I**</u>
<u>**Excessive Force and Failure to Intervene**</u>
<u>**42 U.S.C. § 1983 and the Fourth Amendment**</u>

78.    PLAINTIFF re-alleges paragraphs 1-77 as though fully set forth herein.

**ANSWER:  Defendants incorporate their answers to paragraphs 1-77 as though fully set forth herein.**

79.    The actions by the DEFENDANT OFFICERS, alleged above, and the failure to intervene in these actions amounted to the excessive use of force on the PLAINTIFF.

**ANSWER:  The allegations made and contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny each and every allegation made and contained in this paragraph.**

80.    The actions of the DEFENDANT OFFICERS, alleged above, violated the Fourth Amendment to the United States Constitution.

**ANSWER:  The allegations made and contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny each and every allegation made and contained in this paragraph.**

81.    The actions of the DEFENDANT OFFICERS, alleged above, were the direct and proximate cause of the Constitutional violations set forth above.

**ANSWER:  The allegations made and contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny each and every allegation made and contained in this paragraph.**

<u>**COUNT II**</u>
<u>**False Arrest**</u>
<u>**42 U.S.C. § 1983 and the Fourth Amendment**</u>

82.    PLAINTIFF re-alleges paragraphs 1- 77 as though fully set forth herein.

**ANSWER: Defendants incorporate their answers to paragraphs 1-77 as though fully set forth herein.**

83.    On or about May 15, 2010, DEFENDANT OFFICERS seized, handcuffed and PLAINTIFF, even though neither DEFENDANT OFFICERS had a reasonable suspicion that the PLAINTIFF had committed, was committing, or was going to commit criminal activity of any sort prior to his detention.

**ANSWER: Defendants admit that on May 15, 2010, Defendant Officer seized and handcuffed the Plaintiff, but deny the remainder of the allegations made and contained in this paragraph.**

84.    On or about May 15, 2010, DEFENDANT OFFICERS arrested the PLAINTIFF without probable cause to believe that the PLAINTIFF had committed, was committing or was going to commit criminal activity.

**ANSWER: The allegations made and contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny each and every allegation made and contained in this paragraph, except to admit that Defendant Officers arrested Plaintiff.**

85.    The actions of the DEFENDANT OFFICERS, alleged above, violated the Fourth Amendment to the United States Constitution.

**ANSWER: The allegations made and contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny each and every allegation made and contained in this paragraph.**

<u>COUNT III</u>
<u>Malicious Prosecution -- State Law Claim</u>

86.    PLAINTIFF re-alleges paragraphs 1-77 as though fully set forth herein.

**ANSWER: Defendants incorporate their answers to paragraphs 1-77 as though fully set forth herein.**

16

87. Directly and in conspiracy, the DEFENDANT OFFICERS complained or alleged that PLAINTIFF violated the laws of the State of Illinois. These allegations commenced and caused a continuation of a criminal proceeding against PLAINTIFF.

**ANSWER: Defendants admit that the Defendant Officers complained or alleged that Plaintiff violated the laws of the State of Illinois. Defendants further admit that based on these allegations, a criminal proceeding was commenced against Plaintiff. Defendants deny the remaining allegations made and contained in this paragraph.**

88. Directly and in conspiracy, DEFENDANT OFFICERS charged PLAINTIFF with the criminal activity alleged above without probable cause.

**ANSWER: The allegations made and contained in this paragraph constitute a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny each and every allegation made and contained in this paragraph.**

89. Directly and in conspiracy, DEFENDANT OFFICERS charged PLAINTIFF with the criminal activity alleged above, knowing the charges were false.

**ANSWER: Defendants deny each and every allegation made and contained in this paragraph.**

90. On or about November 3, 2011, the underlying criminal charges were resolved in favor of PLAINTIFF.

**ANSWER: Admitted.**

91. The actions of the DEFENDANT OFFICERS, alleged above, violated Illinois law.

**ANSWER: The allegations made and contained in this paragraph constitute a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny each and every allegation made and contained in this paragraph.**

92. The actions alleged in this Count were undertaken with malice, willfulness and/or reckless indifference to the rights of the PLAINTIFF.

**ANSWER: The allegations made and contained in this paragraph constitute a legal conclusion**

17

to which no response is required.  To the extent that a response is required, Defendants deny

each and every allegation made and contained in this paragraph.

93.     The actions of the DEFENDANT OFFICERS, alleged above, were the direct and
proximate cause of the violations set forth above.

**ANSWER:  The allegations made and contained in this paragraph constitute a legal conclusion**

**to which no response is required.  To the extent that a response is required, Defendants deny**

**each and every allegation made and contained in this paragraph.**

**COUNT IV**
**Intentional Infliction of Emotional Distress - State Law Claim**

94.     PLAINTIFF re-alleges paragraphs 1-77 as though fully set forth herein.

**ANSWER:  Defendants incorporate their answers to paragraphs 1-77 as though fully set forth**

**herein.**

95.     The actions of the DEFENDANT OFFICERS on or about May 15, 2010, alleged
above, were extreme and outrageous. By and with these actions, the DEFENDANT OFFICERS
intended to cause or recklessly disregarded the probability that they would case severe emotional
distress to the PLAINTIFF.

**ANSWER:  The allegations made and contained in this paragraph constitute a legal conclusion**

**to which no response is required.  To the extent that a response is required, Defendants deny**

**each and every allegation made and contained in this paragraph.**

96.     These actions, alleged above, directly and proximately caused severe emotional
distress to the PLAINTIFF including, but not limited to, depression, fear and anxiety. As a result,
PLAINTIFF sought professional care and take medication.

**ANSWER:  The allegations made and contained in this paragraph constitute a legal conclusion**

**to which no response is required.  To the extent that a response is required, Defendants lack**

**personal knowledge sufficient to form a belief as to the truth of the allegations contained in this**

paragraph, and therefore denies the same.

97.     The actions of the DEFENDANT OFFICERS, alleged above, violated Illinois law.

**ANSWER:  The allegations made and contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny each and every allegation made and contained in this paragraph.**

98.     The actions alleged in this Count were undertaken with malice, willfulness and reckless indifference to the rights of the PLAINTIFF.

**ANSWER:  The allegations made and contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny each and every allegation made and contained in this paragraph.**

## COUNT V
## 42 U.S.C. § 1983 Conspiracy Claim

99.     PLAINTIFF re-alleges paragraphs 1-77 as though fully set forth herein.

**ANSWER:  Defendants incorporate their answers to paragraphs 1-77 as though fully set forth herein.**

100.     The DEFENDANT OFFICERS conspired and acted together to cause damage to PLAINTIFF, as alleged above.

**ANSWER:  Defendants deny each and every allegation made and contained in this paragraph.**

101.     The actions of the DEFENDANT OFFICERS, alleged above, were the direct and proximate cause of the Constitutional violations set forth above.

**ANSWER:  The allegations made and contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny each and every allegation made and contained in this paragraph.**

102.     The actions of the DEFENDANT OFFICERS, alleged above, were the direct and

proximate cause of the injuries that PLAINTIFF suffered and that are set forth above.

**ANSWER: The allegations made and contained in this paragraph constitute a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny each and every allegation made and contained in this paragraph.**

**COUNT VI**
**State Law Claim (745 ILCS 10/9-102)**

103.    PLAINTIFF re-alleges paragraphs 1-77 as though fully set forth herein.

**ANSWER: Defendants incorporate their answers to paragraphs 1-77 as though fully set forth herein.**

104.    Defendant CITY OF CHICAGO is the employer of the DEFENDANT OFFICERS.

**ANSWER: Admitted.**

105.    The DEFENDANT OFFICERS committed the acts alleged above under color of law and while on duty and in the scope of their employment by the CITY OF CHICAGO.

**ANSWER: Admitted.**

**COUNT VII**
**State Law Claim for Respondeat Superior**

106.    PLAINTIFF re-alleges paragraphs 1-77 as though fully set forth herein.

**ANSWER: Defendants incorporate their answers to paragraphs 1-77 as though fully set forth herein.**

107.    The acts of the DEFENDANT Officers, alleged above, were committed in the scope of employment and therefore the Defendant CITY OF CHICAGO, as principal, is liable for the actions of its agent(s) under the doctrine of respondeat superior.

**ANSWER: The allegations made and contained in this paragraph constitute a legal conclusion to which no response is required.**

## AFFIRMATIVE AND 12(b)(6) DEFENSES

1.   At all relevant times, the use of any force against Plaintiff was reasonable.

2.   Defendants are governmental officials, namely police officers, who perform discretionary functions.  At all times material to the events alleged in Plaintiff's complaint, a reasonably competent officer, objectively viewing the facts and circumstances then confronting these Defendants, could have believed his actions regarding the encounter with Plaintiff to be lawful, in light of clearly established law and the information possessed by Defendants.  Defendants therefore are entitled to qualified immunity on Plaintiff's claims under federal law.

3.   Under the Illinois Tort Immunity Act, Defendants are not liable for any of the state law claims alleged because the decision as to what action to take with regard to Plaintiff was a discretionary decision for which the City and its employees are immune from liability.  745 ILCS 10/2-201 (2010).

4.   Under the Illinois Tort Immunity Act, Defendants are not liable for any of the state law claims alleged because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law, unless such acts or omissions constitute willful and wanton conduct. Defendants' actions were performed in the execution and enforcement of the law and were not willful and wanton.  Therefore, Defendants are immune from liability for Plaintiff's state law claims.  745 ILCS 10/2-202 (2010).

5.   To the extent any injuries or damages claimed by Plaintiff were proximately caused, in whole or in part, by negligent, willful, wanton and/or other wrongful conduct on the part of Plaintiff, any verdict or judgment obtained by Plaintiff must be reduced by application of the principles of comparative fault, by an amount commensurate with the degree of fault attributed to Plaintiff by the

21

jury in this case.

6.  To the extent that Plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by the application of the principle that Plaintiff has a duty to mitigate any injuries or damages attributed to Plaintiff by the jury in this case.

7.  As to Plaintiff's state law claims, Defendants are not liable to pay attorney's fees, for the law in Illinois clearly establishes that, absent a statute or contractual agreement to the contrary, each party bears his or her own attorney's fees and expenses and burdens of litigation.  *See Taylor v. Pekin Ins. Co.*, 899 N.E.2d 251, 256 (Ill. 2008).

8.  Defendants had probable cause to arrest plaintiff.

WHEREFORE, Defendants request Plaintiff Complaint be dismissed with prejudice.

## <u>JURY DEMAND</u>

Defendants demand trial by jury.


Dated: February 15, 2012                    Respectfully submitted,

                                             /s/ Matthew A. Hurd
                                            MATTHEW A. HURD
                                            Deputy Corporation Counsel

30 N. LaSalle Street
Suite 900
Chicago, Illinois 60602
(312) 742-6404 (Phone)
(312) 744-6566 (Fax)
Attorney No. 6191532

23